[Civ. No. 33296. Fourth Dist., Div. Two. Aug. 17, 1984.]

GERALD S. RUBIN, Plaintiff and Respondent, v.
LOS ANGELES FEDERAL SAVINGS AND LOAN ASSOCIATION
et al., Defendants and Appellants.

COUNSEL

Morrison & Foerster, Haley J. Fromholz, Kenneth M. Glazier and Robin M. Shapiro for Defendants and Appellants.

Best, Best & Krieger, Barton C. Gaut and Virginia A. Ettinger for Plaintiff and Respondent.

OPINION

KAUFMAN, Acting P. J.—This is an appeal by defendant Los Angeles Federal Savings Bank[1] (Los Angeles Federal), formerly Los Angeles Federal Savings and Loan Association, from a judgment granting an injunction prohibiting Los Angeles Federal from enforcing the due-on-sale clause contained in a deed of trust affecting the property owned by plaintiff Gerald Rubin.

FACTS

In 1964 Los Angeles Federal made a $359,000 loan to the Dial Construction Company. The loan was used to finance Dial's purchase of a 34-unit apartment complex in San Bernardino and was secured by a deed of trust containing a due-on-sale clause giving Los Angeles Federal the right to call its loan due if the apartment complex should ever be sold without the lender's prior consent.

In 1968 Dial sold the apartment complex to Barry Morse. Dial and Morse notified Los Angeles Federal of the sale, and Los Angeles Federal consented to the transfer at an increased interest rate upon payment of a loan assumption fee.

In 1976, Morse sold the apartment complex to a company known as Urban California, Inc. In February of 1978, Urban California sold the apartment complex to the current owner, the plaintiff Gerald Rubin. Rubin and Urban California did not directly notify Los Angeles Federal that Rubin had purchased the property, and Los Angeles Federal did not consent to the trans-

---

[1]First Los Angeles Corporation, Inc., which is also a party to the appeal, is the trustee named in the deed of trust of which Los Angeles Federal is the sole beneficiary and holder. For convenience, "Los Angeles Federal" will refer to both appellants unless the context otherwise indicates.

fer. Rubin did, however, immediately record the grant deed showing the transfer of the property to him. Rubin's name was immediately entered on the tax rolls as the record owner of the property as of the lien date of March 1, 1978, and Los Angeles Federal paid tax bills out of an impound account funded by Rubin. Rubin made the payments on the loan as they became due from the time he purchased the property. On one occasion in November 1980 he telephoned the offices of Los Angeles Federal with an inquiry about the loan payments. The telephone memo of Los Angeles Federal recites the loan number and lists Rubin's name as the borrower.

On July 6, 1981, Los Angeles Federal wrote a letter to Rubin, stating that it had "come to [its] attention" that the property had been transferred to Rubin. The letter advised Rubin the deed of trust contained a due-on-sale clause and requested Rubin to contact Los Angeles Federal for the terms under which Los Angeles Federal would allow Rubin to assume the loan. When Rubin did not respond, Los Angeles Federal wrote a second letter on August 4, 1981, requesting Rubin to execute loan assumption documents sent with the letter which would have substantially increased the interest rate and imposed a loan assumption fee. Rubin did not execute the documents. He responded through his attorney that although he would consider documentation of the bank's position, he was not obligated to sign the assumption documents and asserted that Los Angeles Federal had waived any rights it may have had under the due-on-sale clause.

Los Angeles Federal thereafter continued to accept Rubin's monthly payments and did nothing further until July 19, 1982. On that date it sent a letter to Rubin announcing its intent to call the loan under the due-on-sale clause unless Rubin agreed to assume the loan at the current market rate. In this letter Los Angeles Federal for the first time purported to reserve its rights under the due-on-sale clause, stating that "continued acceptance of payments" should not be construed as a waiver.

On September 2, 1982, Los Angeles Federal gave notice that the loan was being called due and payable in full as of September 13, 1982. On March 10, 1983, Los Angeles Federal initiated nonjudicial foreclosure proceedings, recording a notice of default and election to sell under the deed of trust.

Rubin filed the instant lawsuit for an injunction to prohibit Los Angeles Federal from proceeding with its nonjudicial foreclosure. The case was tried to the court sitting without a jury. The court issued a statement of decision, in which it made the following findings: Los Angeles Federal had no knowledge, actual or constructive, of the transfer of the property before Septem-

ber of 1978. Sometime between September 1978 and July 6, 1981, Los Angeles Federal obtained actual knowledge of the transfer to the plaintiff in 1978. Beginning in July of 1981, Los Angeles Federal attempted to exercise its rights under the due-on-sale clause. Rubin declined to assume the loan under new terms. Los Angeles Federal at all times continued to accept the normal monthly payments. The payments were not in default at any time. Before July of 1982, the payments were accepted without qualification and without any reservation of rights to enforce the provisions of the contract. The payments were received without qualification for at least a year after notice of the transfer. Then, by the letter of July 19, 1982, Los Angeles Federal attempted to make a written reservation of its rights under the due-on-sale clause, and payments after that time were accepted pursuant to the written reservation of rights. The trial court specifically found there was no conduct constituting a waiver of rights to enforce the due-on-sale clause either before September of 1978 or since July of 1982. However, the court found Los Angeles Federal had waived its right to enforce the due-on-sale clause by reason of its failure to foreclose and its acceptance of the payments with full knowledge of the facts and without any reservation of rights between July 1981 and July 1982.

## CONTENTIONS, ISSUES AND DISCUSSION

Rubin correctly asserts that the existence of substantial evidence to support the court's determination of waiver is not properly in issue on appeal because the record on appeal consists solely of appendices in lieu of a clerk's transcript and certain documentary exhibits. ■ "The law is well settled that an appeal on the clerk's transcript and certain exhibits only is to be treated as an appeal on the judgment roll. . . . [¶] Since it is impossible to determine from the clerk's transcript what evidence the trial court heard and considered, this court must assume there was substantial evidence to support the order." (*Ford* v. *State of California* (1981) 116 Cal.App.3d 507, 513 [172 Cal.Rptr. 162], disapproved on other grounds in *Duran* v. *Duran* (1983) 150 Cal.App.3d 176 [197 Cal.Rptr. 497].)

Los Angeles Federal, however, contends that in view of the trial court's determinations as set forth in its statement of decision, as a matter of law, the court could find no waiver on its part. We examine Los Angeles Federal's arguments and conclude they are not meritorious.

One argument, found essentially for the first time in appellant's reply brief, is based on the asserted rule that there can be no finding of waiver unless the conduct in question was " 'so manifestly . . . indicative of an intent to relinquish voluntarily a particular right that no other reasonable

explanation of [the] conduct is possible.' " (*Central Bank* v. *Superior Court* (1978) 81 Cal.App.3d 592, 600-601 [146 Cal.Rptr. 503]; accord, *New Linen Supply* v. *Eastern Environmental Controls, Inc.* (1979) 96 Cal.App.3d 810, 814-815 [158 Cal.Rptr. 251].) Los Angeles Federal contends the trial court could not make a finding of waiver because it expressly found that there were several possible explanations for its forebearance, one of which was that the decision in *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970] had made lenders' due-on-sale rights temporarily unenforceable. This contention is not well taken.

First of all, Los Angeles Federal's characterization of the trial court's finding in respect to the possible explanations for its conduct is not accurate. The court's finding on this point was expressed as follows: "Prior to July 1982, the defendants did not choose to attempt to exercise their rights of foreclosure under the due-on-sale clause. There is no direct evidence as to why the defendants did not do so. There is circumstantial evidence that the right was not exercised due to either or both of the following reasons: [¶] (1) The defendants' interpretation of the *Wellankamp* [sic] decision and (2) the assertion of the plaintiff's counsel in his letter of September 14, [1981],[2] that the defendants had waived their rights prior to Mr. Rubin becoming a transferee."

Thus the court did not say that one reason for Los Angeles Federal's inaction was that the *Wellenkamp* decision had rendered due-on-sale clauses unenforceable, but only that Los Angeles Federal may have interpreted *Wellenkamp* as having that result. Moreover, the second possible reason found by the court for Los Angeles Federal's inaction was that Los Angeles Federal might have concluded Rubin's attorney was correct in asserting that it had already waived its right to enforce the due-on-sale clause.

■ Secondly, the language found in the cited cases to the effect that a waiver by conduct should not be found unless there is no other reasonable explanation for the conduct is not a rule controlling appellate review of a finding of waiver by a trial court based on substantial evidence. In *Central Bank* v. *Superior Court, supra,* where the language was quoted from a 1951 federal court decision (81 Cal.App.3d at pp. 600-601), the court used the language as a determinate of which party had the burden of proof on the issue of waiver, not in determining the sufficiency of the evidence. (*Id.,* at p. 601.) In *New Linen Supply* v. *Eastern Environmental Controls, Inc.,*

---

[2]The statement of decision actually specifies the year as 1983, but it is clear that the court was referring to a letter from Rubin's counsel to Los Angeles Federal dated September 14, 1981.

*supra,* although the court purported to use the rule in discharging its duty to examine the entire record to ascertain whether there was substantial evidence to support a waiver, the court expressly recognized: "Waiver of a contractual right . . . is ordinarily a question of fact and determination of this question, if supported by substantial evidence, is binding on an appellate court." (96 Cal.App.3d at p. 814, citing *Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816].)

That is unquestionably the law. ■ And there is no more oft-repeated rule than: when the evidence gives rise to conflicting reasonable inferences, one of which supports the finding of the trial court, the trial court's finding is conclusive on appeal. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 254, pp. 4245-4246, and numerous cases cited.) That rule applies even where the standard of proof in the trial court was "clear and convincing evidence" rather than "a preponderance of the evidence." (*United Professional Planning Inc.* v. *Superior Court* (1970) 9 Cal.App.3d 377, 387 [88 Cal.Rptr. 551]; see 6 Witkin, Cal. Procedure, *supra,* Appeal, § 250, pp. 4241-4242.)

Finally, Los Angeles Federal is mistaken in urging that no waiver could be found in the absence of its actual subjective intent to waive its rights. ■ Although waiver is frequently said to be the intentional relinquishment of a known right, waiver may also result from conduct "which, according to its natural import, is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished." (*Medico-Dental etc. Co.* v. *Horton & Converse* (1942) 21 Cal.2d 411, 432 [132 Cal.Rptr. 457]; *Crest Catering Co.* v. *Superior Court* (1965) 62 Cal.2d 274, 278 [42 Cal.Rptr. 110, 398 P.2d 150].) Los Angeles Federal asserts that its failure to foreclose earlier did not induce Rubin to change his position or act otherwise than he did. ■ However, detrimental reliance is not a necessary element of waiver, only of estoppel. Moreover, the assertion Rubin would not have acted otherwise is both speculative and unsupported by the record. Had Los Angeles Federal asserted its due-on-sale clause earlier, Rubin may well have refinanced or resold the property. We have no way of knowing.

■ The second and apparently principal argument of Los Angeles Federal is that no waiver of the right may be found unless the right was a legally enforceable one (*San Bernardino I. Co.* v. *Merrill* (1895) 108 Cal. 490, 494 [41 P. 487]; *City of Coronado* v. *California Coastal Zone Conservation Com.* (1977) 69 Cal.App.3d 570, 577 [138 Cal.Rptr. 241]) and that during the period in which the waiver was found by the court (July 1981 to July 19, 1982) Los Angeles Federal's rights under the due-on-sale

clause were unenforceable by virtue of the California Supreme Court's decision on August 25, 1978, in *Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d 943 and, possibly, the decision of this court on July 2, 1981 as modified on July 22, 1981, in *de la Cuesta* v. *Fidelity Fed. Sav. & Loan Assn.* (1981) 121 Cal.App.3d 328 [175 Cal.Rptr. 467].[3] Los Angeles Federal states in its reply brief: "This appeal presents a single, focused question of law: Can a right be waived by the mere failure to enforce it, at a time when that right is legally unenforceable?"

We observe first that the court's finding of waiver here was not based solely on Los Angeles Federal's failure to initiate foreclosure proceedings but also on its acceptance of the monthly payments from Rubin as they became due over a substantial period of time without any reservation of rights and with full knowledge that the property had been transferred to Rubin in 1978. (Cf. *Kern Sunset Oil Co.* v. *Good Roads Oil Co.* (1931) 214 Cal. 435, 440-441 [6 P.2d 71, 80 A.L.R. 453].) More importantly, however, in respect to this argument of Los Angeles Federal, it is simply incorrect that its rights under the due-on-sale clause were legally unenforceable from July 1981 to July 1982.

The *Wellenkamp* decision was decided in 1978, but it dealt only with the rights of a state chartered institution to enforce the due-on-sale clause in one of its deeds of trust. It of course did not and could not purport to determine the rights of a federally chartered institution such as Los Angeles Federal. Los Angeles Federal's rights under its due-on-sale clause were not therefore unenforceable by virtue of *Wellenkamp.*

It is true, of course, that on July 2, 1981, this court issued its decision, modified on July 22, 1981, in *de la Cuesta* v. *Fidelity Fed. Sav. & Loan Assn., supra,* 121 Cal.App.3d 328, holding the *Wellenkamp* decision applicable to a federally chartered savings and loan association. However, thereafter the United States Supreme Court noted probable jurisdiction and on June 28, 1982, issued its decision in *Fidelity Federal Sav. & Loan Assn.* v. *de la Cuesta* (1982) 458 U.S. 141 [73 L.Ed.2d 664, 102 S.Ct. 3014] vacating our *de la Cuesta* decision and remanding the case to this court for further proceedings. (See *Tan* v. *California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 805-806 [189 Cal.Rptr. 775].) Thus, from a theoretical point of view our decision in *de la Cuesta* v. *Fidelity Fed. Sav. & Loan*

---

[3]This court's decision borrowed extensively from and was based largely on the reasoning of the decision by the Court of Appeal for the First Appellate District on June 1, 1981, in *Panko* v. *Pan American Fed. Sav. & Loan Assn.* (1981) 119 Cal.App.3d 916 [174 Cal.Rptr. 240], vacated *Pan American Sav. & Loan Assn.* v. *Panko* (1982) 458 U.S. 1117 [73 L.Ed.2d 1380, 102 S.Ct. 3503].

*Assn., supra,* 121 Cal.App.3d 328 never constituted authoritative precedent as to federally chartered institutions. The law is and in theory always was that set forth in the decision of the United States Supreme Court in *Fidelity Federal Sav. & Loan Assn.* v. *de la Cuesta* (1982) 458 U.S. 141 [73 L.Ed.2d 664, 102 S.Ct. 3014]. (Cf. *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680].) Thus, technically the due-on-sale rights of a federally chartered institution were legally enforceable during the period July 1981 to July 1982. If any proof were required one need only look to the Supreme Court's *de la Cuesta* decision and the decision of this court in *Tan* v. *California Fed. Sav. & Loan Assn., supra,* 140 Cal.App.3d 800, in both of which the federally chartered institution was successful in enforcing its rights under its due-on-sale clause.

Moreover, even from a practical viewpoint Los Angeles Federal's assertion that its rights were unenforceable is unpersuasive. It was common knowledge in the banking industry that review of the *de la Cuesta* decision would be sought in and, later, was granted by the United States Supreme Court. Indeed, even after our decision in *de la Cuesta* issued, Los Angeles Federal asserted its due-on-sale clause as the basis for its insistence that Rubin execute the loan assumption documents which were not sent to him by it until after our decision in *de la Cuesta.*

Los Angeles Federal's premise, that its rights under its due-on-sale clause were unenforceable, being incorrect, its argument that as a matter of law it could not have waived its rights must fail.

DISPOSITION

The judgment is affirmed.

McDaniel, J., and Rickles, J., concurred.