Filed 1/22/14  Nixon v. Lafler CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LARRY NIXON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ADRIENNE LAFLER et al.,<br><br>    Defendants and Respondents. | B247679<br><br>(Los Angeles County<br> Super. Ct. No. BC467290) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

C. Timothy Lashlee for Plaintiff and Appellant.

Young & Young and George W. Young for Defendants and Respondents.

## INTRODUCTION

Plaintiff and appellant Larry Nixon appeals from the judgment entered on his claims for breach of contract and negligence against his neighbors Adrienne Lafler and Marvin Bucholz (collectively, respondents) and on respondents' cross-claims against Nixon for breach of contract. This dispute among neighbors arose out of the rebuilding of a wall between their adjacent properties. The project was subject to a written agreement between the neighbors. Nixon contends that the trial court erred in denying his claims based on respondents' failure to remove dirt left on his property, and in granting respondents' breach of contract claim based on Nixon's refusal to allow them to access his property to retrieve the dirt which they needed to replace on their own property. He also contends that the trial court erroneously awarded respondents damages for their costs to purchase replacement dirt. We find that substantial evidence supported the trial court's findings and thus affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The parties entered into a "Fence Line Agreement" (the agreement) dated August 12, 2010, and prepared by Nixon, whereby respondents agreed to replace an existing chain link fence separating the parties' neighboring residential properties in La Puente with a new block wall, and agreed to use their best efforts to complete the construction by November 1, 2010. Nixon agreed that during the construction, the excavated dirt could be stored on his property, and respondents would remove the dirt after the wall was constructed and regrade and they would restore his property to its original state. Respondents assumed liability for "[a]ny

---

[1]    The factual background is taken from the facts and evidence in the record and the trial court's statement of decision.

2

damage done to humans, animals, or loss of material items due to theft or damage while the property is unsecured because of the construction," and assumed responsibility for the well being and confinement of the farm animals on Nixon's property.

The agreement further provided: "The following omissions to Exhibit 1[2] must be corrected: [¶] a. In order to be valid the engineer's signature must be in RED ink. [¶] b. Need name and address of engineer and plot/site plan showing the elevation and wall configuration. [¶] c. Need certificate of insurance."

The contractor S&H Cement and its agents provided evidence of vehicle insurance and workers' compensation insurance to Nixon. In addition, Nixon talked to the city building department and was told that S&H had liability insurance. Nixon was satisfied with the proof of insurance and permitted construction of the wall to go forward, which involved, in part, use of a "Bobcat" tractor to dig and transport dirt onto Nixon's property.

On September 12, 2010, Nixon sent a letter to respondents, asserting that they were responsible for the theft of his saddle, for damage to his dog run caused by the Bobcat, and for a missing survey stake. In addition, the letter demanded that Nixon be provided with certificates of liability and worker's compensation insurance before workers could enter his property again to complete the job. Thereafter, Nixon refused access to workers attempting to remove the soil from his property.

On November 26, 2010, Nixon wrote another letter, this time to respondents' counsel, stating that he was anxious to have the soil removed from his property but that there was a significant problem remaining to be resolved

---

**2** The document referred to as Exhibit 1 was not in evidence at trial, and the court inferred that it was the plans and specifications for the construction project.

3

involving soil sinking around the footing of the wall. He wrote: "I am willing to allow any licensed, insured excavation engineers access to my property for the purpose of evaluating and remedying this problem. Any heavy equipment involved must be operated by a licensed, insured and capable operator and a copy of the insurance and license must be provided two business days prior to access to the property."

On March 29, 2011, respondents' counsel sent a letter to Nixon stating, "I believe the best situation to resolve this is that we hire a contractor who is licensed and insured to move the dirt back onto my clients' property. . . . [¶] When the dirt is moved it will also give the contractor an opportunity to fix the grade issues that resulted from the moving of the dirt." The letter also asked Nixon to provide a recommendation for a contractor if he had one.

According to Bucholz's testimony, Nixon never recommended a contractor and respondents were unable to find another one to move the dirt from his property. Bucholz testified that on April 18, 2011, he spoke to Nixon and told him that respondents needed the soil, and that if Nixon did not grant them access, they would purchase replacement soil and sue Nixon for the costs. Nixon continued to refuse access and soon afterwards, respondents purchased replacement soil from another source and neither removed the soil from Nixon's property nor regraded his land.

Nixon sued respondents for breach of written contract, breach of oral contract, and negligence. In particular, he alleged that respondents breached the agreement by failing to remove the excavated soil and regrade his property, which required him to hire someone to do so at a cost of at least $15,800. Nixon also alleged that during construction respondents' agents had damaged his property, including a block wall, a horse corral, a survey stake, and the bumper of his truck, that they had left a gap between the new wall and his fence that allowed two goats

4

to escape, and that they had left his property unsecured resulting in the theft of a saddle from his property. He also sued for breach of oral contract, alleging that the parties orally agreed that respondents would rent Nixon's RV truck for $124 a month for use as a bathroom facility during the construction period.

Respondents cross-complained for breach of contract, alleging that Nixon had committed a breach by refusing to allow respondents access to his property in order to remove the dirt, and alleging that they suffered damages by having to purchase replacement dirt and pay to get it onto their property.

The trial court conducted a two-day bench trial, after which the parties stipulated to a "joint summary of testimony" that outlined the substance of the witnesses' testimony. The trial court issued a lengthy and detailed statement of decision. The court concluded that the agreement "requires a certificate of insurance" and found that Nixon was shown proof of vehicle insurance by an agent or employee of S&H and worker's compensation insurance by S&H, and that Nixon knew that S&H had provided proof of liability insurance to the County building department for the purpose of obtaining a permit for the construction project.

The court further found that once the permit was issued, Nixon allowed S&H to work and drive heavy equipment on his property, dump the dirt from respondents' property onto his, move items around, care for the animals, and use his RV's bathroom, and did not express a lack of satisfaction with the proof of insurance that he had been shown. Based on these facts, the court concluded that Nixon "accepted the proof of insurance shown to him as meeting the 'need certificate of insurance' requirement and that he waived the right to demand a certificate of insurance as he let the job move forward." The court further found that "Nixon's conduct was inconsistent with the intent to enforce 'need certificate of insurance' and induced a reasonable belief that the condition was fulfilled or

5

extinguished." Although the court found most of Nixon's testimony to be credible, it deemed "disingenuous" his testimony regarding his reasons for demanding proof of insurance for the dirt removal and regrading phase, "given that he let S&H's [B]obcat operator onto his property in the first instance and the evidence shows that he also allowed another [B]obcat operator onto his property without any knowledge or concern about the insurance status of that other [B]obcat operator." The court found that evidence of Nixon's waiver of the term requiring a certificate of insurance was "clear and convincing."

The court further found that "there is no term in the contract requiring that the certificate of insurance be shown again before the removal of dirt and regrading phase. Nixon drafted the contract. If this was material, he should have put it in the contract."

Having found that Nixon had no contractual right to demand a certificate of insurance before permitting respondents access to his property to remove the soil, the court found that respondents had not breached the agreement by failing to remove the dirt and regrade Nixon's land, given that Nixon prevented them from doing so. Further, the court concluded that Nixon breached or anticipatorily breached the agreement by not allowing respondents back onto his property to remove the dirt.

With respect to damages on respondents' cross-complaint, the court awarded them $18,250 for their cost in replacing the soil. On Nixon's complaint, the court awarded him $2,160 to replace the corral, $3,820 to fix the damaged wall, $250 to close the gap between the wall and the fence, and $124 for use of the RV, for a total damages award of $6,354.

Nixon timely appealed from the judgment.

6

## DISCUSSION

Nixon contends that the trial court erred in concluding that respondents were excused from their responsibility to remove the dirt from his property and regrade his land based on Nixon's refusal to grant access until a certificate of insurance was provided to him. He further contends that the court erroneously found him in breach of contract and erroneously denied his claims based on respondents' failure to move their dirt. He also challenges the court's award of damages on respondents' cross-claim for breach of contract.

Our review of the judgment is conducted in view of the trial court's issuance of a detailed statement of decision following the bench trial. We review the trial court's express factual findings in the statement of decision for substantial evidence. (*Apex LLC v. Sharing World, Inc.* (2012) 206 Cal.App.4th 999, 1009 (*Apex*).) Findings of fact are liberally construed to support the judgment. (*Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189.) Further, the ultimate facts found in the court's statement of decision necessarily include findings on the intermediate evidentiary facts that sustain them, and any conflict in the evidence is resolved in support of the trial court's decision. (*Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1407.) We review legal issues under a de novo or independent standard. (*Apex, supra,* 206 Cal.App.4th at p. 1009.) Thus, in interpreting contractual terms, "'[w]hen no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract.' [Citation.]" (*Fink v. Shemtov* (2012) 210 Cal.App.4th 599, 608.)

### I. *Nixon's Waiver of Term Requiring Certificate of Insurance*

"'A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and

damage to plaintiff resulting therefrom.'  [Citation.]"  (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1387.)  "'[P]revention of performance by one party to a contract excuses performance by the other [party].'  [Citation.]"  (*Id.* at p. 1387.)

Any contractual term is "subject to waiver by the party for whose benefit [it is] made.  [Citation.]"  (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1339, fn. omitted.)  Contractual provisions may be waived by conduct.  (*Pease v. Brown* (1960) 186 Cal.App.2d 425, 428; *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 598 (*Savaglio*) ["waiver may stem from conduct 'which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' [Citations.]"); see *Bohman v. Berg* (1960) 54 Cal.2d 787, 795 [when party to a contract accepts other party's performance without objection it is assumed the performance was that contemplated by the agreement].)  "'The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].'  [Citation.]"  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.)

"Whether there has been a waiver is a question of fact.  [Citations.]  We review the trial court's finding of waiver under the deferential 'substantial evidence' standard."  (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1052-1053, superseded by statute on another ground as stated in *DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 668; see *Savaglio, supra,* 149 Cal.App.4th at p. 598.)

Nixon's chief contention is that the evidence the trial court relied upon to find a waiver was not strong enough to satisfy the "clear and convincing" standard. The trial court found that the following facts established a waiver by Nixon:

8

Nixon was shown proof of vehicle insurance and worker's compensation insurance by S&H, and Nixon was informed by the city building department that S&H had provided proof of liability insurance. In response, Nixon did not express a lack of satisfaction with the proof of insurance that he had been shown, and instead allowed S&H to access and work on his property, including using Bobcats, dumping the dirt from respondents' property onto his, moving things around, caring for the animals, and using the bathroom on his RV. In light of the fact that Nixon previously had permitted S&H's Bobcat operator onto his property and also allowed another Bobcat operator to work his property without any proof of insurance, the court did not credit Nixon's testimony that he refused access for the dirt removal phase out of a legitimate concern over the status of the insurance held by respondents' contractor.

Where, as here, the substantial evidence test applies and "the evidence gives rise to conflicting reasonable inferences, one of which supports the finding of the trial court, the trial court's finding is conclusive on appeal. [Citation.] That rule applies even where the standard of proof in the trial court was 'clear and convincing evidence' rather than 'a preponderance of the evidence.' [Citations.]" (*Rubin v. Los Angeles Fed. Sav. & Loan Assn.* (1984) 159 Cal.App.3d 292, 298 (*Rubin*); see *Brookview Condominium Owners' Assn. v. Heltzer Enterprises-Brookview* (1990) 218 Cal.App.3d 502, 513 ["The existence or nonexistence of a waiver involved issues of fact determined by the lower court. Where different inferences might fairly and reasonably have been drawn the choice made by the trial court, in the absence of an abuse of discretion, is binding on appeal."].) The court's finding that a waiver occurred based on the above facts was not an unreasonable inference. Therefore, under the applicable standard of review, we will not disturb its finding.

Nixon also makes conclusory arguments that the trial court erred in finding that a waiver had occurred because there was no consideration provided, because the waiver was not in writing, and because there was no evidence that respondents detrimentally changed their position. However, Nixon's arguments are incorrect under the law. (See *Knarston v. Manhattan Life Ins. Co.* (1903) 140 Cal. 57, 67 [no consideration required for waiver as opposed to estoppel]; 13 Williston on Contracts (4th ed. 2013) § 39:26, p. 675 ["It is well settled that a party to a written contract may orally, or by implication from conduct, waive performance of a contract term or condition inserted in the contract for its benefit and that the waiver does not require a writing."]; *Rubin, supra*, 159 Cal.App.3d at p. 298 ["[D]etrimental reliance is not a necessary element of waiver, only of estoppel."].) Civil Code section 1541, upon which Nixon relies in arguing that consideration or a writing are required, governs the requirements of a release, not a waiver implied from conduct. (*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 31, fn. 7 ["an agreement to discharge from liability previously incurred is more normally denominated a release [than a 'waiver']. Civil Code section 1541 permits the extinction of an obligation, unsupported by consideration, provided that the release is in writing. The writing must, however, expressly show the creditor's intent to extinguish the obligation."])

In sum, substantial evidence supported the trial court's determination that Nixon waived his contractual right to demand a certificate of insurance.

II. *Trial Court's Finding of Material Breach*

The trial court found that Nixon's refusal to grant access to his property for the dirt removal phase constituted a material breach. "'[I]n contract law a material breach excuses further performance by the innocent party. [Citations.]' [Citations.] 'Normally the question of whether a breach of an obligation is a

10

material breach, so as to excuse performance by the other party, is a question of fact.  [Citations.]'  [Citation.]" (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1602-1603; see *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277.)  Substantial evidence supported the trial court's conclusion that Nixon's refusal to allow respondents onto his land constituted a material breach that in turn excused respondents' failure to remove the soil and regrade Nixon's property, and also justified damages on respondents' cross-claim.

We reject Nixon's contention that any breach by Nixon was "nullified by the subsequent actions" of the parties.  Nixon contends that he retracted his refusal to permit access to his property when respondents agreed on March 29, 2011 that they would hire a licensed and insured contractor to remove the soil and fix the grading issues.  In its statement of decision, the trial court took note of the fact that the March 29, 2011 letter upon which Nixon relies led him to believe that respondents would hire a different licensed contractor to remove the dirt and fix the grading issues.  However, ultimately, the trial court found that Nixon denied access to his property, in breach of the agreement.  Because we must imply "all necessary findings supported by substantial evidence" and "'construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance'" (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443 (*Lewis*)), we conclude that the trial court necessarily credited two facts to which Bucholz testified:  first, that respondents tried to hire another contractor other than S&H to remove the soil from Nixon's property but could not get one; and second, that on April 18, 2011, several weeks after the March 29, 2011 letter was sent, Nixon was still prohibiting access to his property even after Bucholz spoke to him and stated that respondents needed the dirt and if Nixon did not grant them access, they would purchase dirt and sue him for the costs.  Thus, there was substantial evidence presented at trial that Nixon

11

returned to his stance that he would not permit S&H access to his property in order to remove the dirt. Accordingly, we will not disturb the court's conclusion that Nixon breached the agreement by failing to permit respondents access to his property.

III. *Damages*

Nixon also contends that the trial court erred in awarding respondents $18,250, their cost to purchase replacement dirt and have it trucked onto their property. He asserts that it was not reasonable for respondents to buy replacement dirt.

A plaintiff may not be awarded damages that could have been mitigated by reasonable effort or expenditures. The defendant (or here, the cross-defendant Nixon) bears the burden of proving a plaintiff failed to mitigate damages. (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 884 (*Powerhouse*).) "'The fact that reasonable measures other than the one taken would have avoided damage is not, in and of itself, proof of the fact that the one taken, though unsuccessful, was unreasonable. [Citation.] "If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen." [Citation.]'" (*Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 41.)

We review for substantial evidence the trial court's implicit finding that respondents acted reasonably in purchasing replacement soil in April 2011. (*Powerhouse, supra,* 221 Cal.App.4th at p. 884 ["Whether a plaintiff acted reasonably to mitigate damages . . . is a factual matter to be determined by the trier of fact, and is reviewed under the substantial evidence test."]) The permit for the block wall did not expire until September 2, 2011, but Bucholz testified that the City building department pressured him to put the soil back on his property and

12

regrade it before May 2011 and told him that otherwise he would have to pull new permits. He testified that therefore he had no choice but to purchase soil. However, the court found not credible Bucholz's testimony that he had no choice in this regard, given the evidence that the permit for the block wall did not expire until September 2, 2011, and respondents' failure to present any evidence that a different permit applied as to the soil removal and regrading.

The trial court's findings could be construed to be ambiguous. On the one hand, the court did not believe Bucholz's testimony that respondents had no choice but to purchase replacement soil. On the other hand, the court found that "Nixon is liable for the cost of replacing the soil that he wrongfully would not allow [respondents] to retrieve from his property," the court thus impliedly finding that respondents did not fail to mitigate their damages.[3] However, Nixon did not assert either before the entry of judgment or in conjunction with a new trial motion or a motion to vacate the judgment that the statement of decision was ambiguous in this regard or request clarification of the decision on this issue. "[W]e therefore must infer findings to support the judgment." (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 911; *Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1535 ["If the statement of decision is ambiguous or omits material factual findings, we will infer any factual findings necessary to support the judgment."].)

As discussed above, Bucholz testified that respondents tried to hire another contractor to remove the soil from Nixon's property but could not get one. Therefore, sufficient evidence in the record supports the determination that this

---

[3] In its discussion of the applicable law, the court devoted a section to a plaintiff's obligation to mitigate its damages.

option was not available to respondents, thus narrowing their remaining options.**4** Further, although the trial court did not believe Bucholz's testimony that he had "no choice" but to purchase replacement soil in April 2011, the law does not require that respondents have had no other choice before incurring these costs. Rather, respondents were required only to make reasonable efforts to avoid damages. Given the length of the impasse on the matter of the soil on Nixon's property, the trial court could reasonably have found that respondents were justified in concluding that it was unlikely that Nixon was ever going to provide them access to his property, and that it was not unreasonable to bypass him and obtain replacement soil without waiting until the expiration date of the permit.

In sum, substantial evidence supports the trial court's determination of respondents' damages.

---

**4** Nixon contends that the most obvious mitigation measure respondents could have taken was to show proof of insurance for S&H to Nixon, in which event he would have permitted them to retrieve their soil and they would have avoided the cost of purchasing replacement soil. As respondents point out, however, their obligation to mitigate their damages did not include acquiescing to Nixon's demand, which the trial court found to be unreasonable, that they again provide proof of insurance for their contractor.

14

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.