Filed 2/19/25  Microwave Dynamics v. Parvin CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICROWAVE DYNAMICS, INC., et al.,<br><br>    Plaintiffs and Appellants,<br><br>      v.<br><br>PARVIN, LLC,<br><br>    Defendant and Respondent. | G062428<br><br>(Super. Ct. No. 30-2021-01182199)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nick A. Dourbetas, Judge. Affirmed in part, reversed in part.

Palmieri, Tyler, Wiener, Wilheim & Waldron, and Erin K. Oyama, for Plaintiffs and Appellants.

Snell & Wilmer, and Jeffrey M. Singletary, for Defendant and Respondent.

This case involves a dispute over different monthly rental schemes in a commercial property lease and in a subsequent addendum to that lease, as well as distributions allegedly owed under an operating agreement. In 1993, three brothers, Peter Adel, Shaun Adel, and Brian Adel (Adel brothers), formed Microwave Dynamics, Inc. (Microwave Dynamics) which "makes telecommunications and satellite equipment for commercial aerospace and defense industry." In 2010, the Adel brothers formed Parvin, LLC (Parvin) to acquire commercial property for Microwave Dynamics' use. Peter Adel had 30 percent ownership interest in Parvin, Shaun Adel had 50 percent, and Brian Adel 20 percent. The following year, Microwave Dynamics and Parvin entered into a 20-year lease with a monthly rental scheme allowing for annual increases. Four months later, they signed an addendum which changed that rental scheme. From the inception of the lease, Microwave Dynamics paid Parvin the base rent pursuant to the original lease, not the addendum. In August 2020, for the first time Parvin attempted to increase Microwave Dynamics' monthly rent pursuant to the annual increase provision in the lease. Microwave Dynamics objected and this litigation ensued.

Following a bench trial, the trial court concluded the parties waived their rights to the rental scheme set forth in the addendum, and that Peter Adel was entitled to a pro rata share of distributions from Parvin. Peter's award, however, was offset by a judgment against Microwave Dynamics for certain rent-related expenses incurred from 2011 through 2014. Microwave Dynamics and Peter Adel appealed.

Microwave Dynamics contends the trial court erred in determining it had waived the rental scheme set forth in the addendum. We conclude substantial evidence supports the trial court's waiver finding. Peter

2

Adel appeals from the portion of the court's judgment offsetting his award with the judgment against Microwave Dynamics. We conclude the trial court could not offset the award because there was a lack of mutuality between Peter's claims against Parvin and Parvin's claims against Microwave Dynamics. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

I

PROCEDURAL HISTORY

A. *Complaint, Answer, and Cross-Complaint*

On May 19, 2022, Microwave Dynamics and Peter Adel (collectively "Plaintiffs") filed a first amended complaint against Parvin, asserting causes of action for breach of contract and declaratory relief. The complaint alleged that Microwave Dynamics and Parvin entered into a 20-year leasing agreement on January 1, 2011 (the "Lease"), which was amended on April 22, 2011 (the "Addendum"). The monthly rental rate under the Lease was $16,500, plus triple net expenses, but the rental rate could be adjusted after the first year. In contrast, the Addendum limited the rental rate to debt obligations and triple net expenses, and provided no annual increases. Parvin never adjusted the rental rate until August 18, 2020, when it attempted to increase the rental rate to $19,744. Microwave Dynamics objected to the rental increase, arguing that Parvin waived the contractual right to adjust the rent because it did not exercise that right within the "'first successive twelve-month period following the first day of the first full calendar month of the term.'" After Parvin served Microwave Dynamics with a 3-day notice to pay the newly adjusted rent or quit the property, Microwave Dynamics paid the adjusted rental rate under protest and filed suit seeking a judicial determination of the lease terms and specific performance.

3

The complaint also alleged that pursuant to an Operating Agreement, executed by the Adel brothers on or about June 18, 2010, Peter was entitled to distributions from Parvin. However, on information and belief, the complaint alleged that Parvin distributed at least $100,000 to Shaun and Brian, and none to Peter in violation of the Operating Agreement. Peter also alleged that in violation of the Operating Agreement, he was denied access to Parvin's books and records.

The Lease provided that the monthly rental rate was $16,500. Microwave Dynamics also was responsible for utilities, insurance property taxes, and reasonable repairs, i.e., triple net expenses. Under paragraph 5, the Lease provided: "The rental specified is based upon the Basic Index (as herein defined), and shall be subject to adjustment, up or down as the case may be, as of the first successive twelve (12) month period following the first day of the first full calendar month of the term (each) such twelve month period being herein referred to as a ('Year'). The amount of monthly rent actually payable for each year of the term after the first year shall be equal to the product of (I) the index (as hereinafter defined) most recently published prior to the beginning of the year for which the adjustment is made, multiplied by (ii) the rental specified in Clause 5 hereof prior to any adjustment, divided by (iii) the Basic Index."

"Notwithstanding anything in this Lease to the contrary, the monthly rent for any year shall never be less than the rental specified above. 'Index' shall mean the Consumer Price Index for All Urban Consumers for Los Angeles-Long Beach-Anaheim, CA (1967:100) published by the Bureau of Labor Statistics, United States Department of Labor. 'Basic Index': shall mean the Consumer Price Index most recently published prior to the Commencement Date. If the Index as now constituted, compiled and

4

published shall be requested to furnish a statement converting the Basic Index to a figure that would be comparable in another Index published by the Bureau of Labor Statistics and such other Index shall be used in computing the adjustment in rental provided herein."

The Addendum provided: "The rent payable by Tenant under the Lease is limited to: [¶] a. Debt service payable to the Interim/Third Party Lender on its loan(s); [¶] b. Debt service payable to CDC ('CDC') and the U.S. Small Business Administration (the 'SBA') on the 504 Loan; [¶] c. Real Estate and rental taxes, association fees/dues, utilities, insurance, and reasonable repair replacement reserves to the extent that Tenant, in accordance with the Lease, is not paying any or all of such items."

Parvin filed an answer, generally denying the factual allegations and raising numerous affirmative defenses, including setoff.

On March 11, 2021, Parvin filed a cross-complaint against Microwave Dynamics, alleging causes of action for declaratory relief and breach of action. Parvin sought a judicial determination that the monthly rent rate was $20,338.38 from January 1, 2021, through December 31, 2021. Parvin also sought damages for breach of the lease in an amount to be determined at trial, but no less than $194,768 based on annual Consumer Price Index (CPI) increases.

Microwave Dynamics filed an answer to the cross-complaint, generally denying the factual allegations and raising numerous affirmative defenses.

B. *Bench Trial*

The parties waived their right to a jury trial on their respective claims. Before the bench trial, the parties filed their respective trial briefs

5

and stipulated to joint trial exhibits, which included the Lease and the Addendum.

### 1. Trial Briefs

Parvin's trial brief argued that it had been seeking an increase in rent for many years, but Microwave Dynamics refused and continued to only pay $16,500 monthly. It contended that even if the court were to find the rent was a fixed $16,500, Microwave Dynamics would still owe at least $112,585 in back rent. As to the alleged unequal distributions to Peter, Parvin contends that "funds were diverted (whether intentional[ly] or inadvertent is immaterial) from Parvin to Microwave Dynamics' benefit to pay for [its] triple net expenses under the commercial lease. The unequal Parvin distributions complained of were made in an effort [to] equalize the parties' accounts based on these improperly diverted funds."

In plaintiffs' trial brief, Microwave Dynamics argued the parties did not dispute the validity of the Addendum, and under its terms, the base rent was lower than $16,500 and there were no annual increases. Microwave Dynamics argued it overpaid rent by $142,647. Peter Adel argued he was entitled to 30 percent of Parvin distributions based on his share of the company. He acknowledged Parvin's Operating Agreement does not specify how distributions would be allocated, but argued that under Corporations Code section 17704.04, subdivision (e), "[i]f the operating agreement does not otherwise provide, profits and losses shall be allocated in proportion to the value, as stated in the required records, of the contributions the limited liability company has received from each member." As to the defense based on Peter's payment of Microwave Dynamics's triple net expenses with checks drawn from Parvin's accounts, Peter argued (1) those payments were made

6

by Brian, not Peter; and (2) any "embezzlement" of Parvin's funds thus would have been committed by Microwave Dynamics or Brian, not Peter.

The bench trial on the claims was held in January of 2023.

2. Peter Adel's Testimony

Peter testified that, when he and his brothers formed Microwave Dynamics in 1993, Shaun owned 50 percent of the shares, Peter 30 percent, and Brian 20 percent. In 2014, Shaun started his own business, and his shares were split between Peter and Brian, resulting in Peter owning 60 percent of Microwave Dynamics. In 2018, Peter acquired Brian's shares, making him the sole owner of Microwave Dynamics.

The Adel brothers decided to purchase a commercial property to save on rent, and in 2010, they formed Parvin to acquire the property. The property was 10,000 square feet, and Microwave Dynamics was and remains the only tenant. After Parvin acquired the property, Microwave Dynamics spent approximately $850,000 to improve the building in 2011.

Shaun was responsible for finding financing to purchase the property. The Adel brothers took out two loans: a Small Business Administration loan (SBA loan) and a loan from a commercial bank. The latter was paid off in the beginning of 2021, but the SBA loan was still outstanding at the time of trial.

Peter testified Brian was the Chief Financial Officer (CFO) of Microwave Dynamics from the inception of the company until November 2018. During that time, Brian sent rent checks in the amount of $16,500 to Parvin. After November 2018, Peter began paying the rent to Parvin. He paid $16,500 in rent because Brian was paying that amount and Peter "assumed that that's the right amount."

Peter recalled that around May 2019, his brothers discussed

7

selling Parvin's commercial property, which Microwave Dynamics was renting. Shaun wanted to increase the rent to increase the valuation of the property. Peter refused. Peter also testified that no one ever mentioned reserving the right to increase the base rent until August 2020. After the increased rent was demanded, in January 2021, Peter began paying the increased rent under protest. He sent two checks for the rent: one in the amount of $16,500, and one in the amount of $3,244, representing the increased rent. In March 2022, after becoming aware Parvin was conceding the validity of the Addendum, Peter began sending rental checks in the amount of $6,264.97. On cross-examination, Peter acknowledged he was aware the Addendum existed in January 2021, after receiving the 3-day notice to pay the increased rent. However, he was not comfortable making a claim that the rent should be paid consistent with the Addendum until it was authenticated in early 2022 by his brothers at their respective depositions. He denied intentionally waiving his right to enforce the Addendum.

Peter testified he may have received one distribution from Parvin in 2011, but he never received any distributions from 2020 until present. Peter also made several requests to access Parvin's books and records since 2020, but was denied.

### 3. Brian Adel's Testimony

Brian testified that, in January 2015, he conducted an audit of Microwave Dynamics and determined that from 2011 through 2014, Parvin was paying for some triple net expenses that should have been paid by Microwave Dynamics. After 2015, Microwave made all the payments required under either the Lease or the Addendum. Brian testified that Microwave returned $35,000 to Parvin, but still owed around $70,000. Asked how Parvin was able to make these payments on behalf of Microwave Dynamics, Brian

8

explained that Microwave Dynamics had purchased the building and opened an account to provide capital for Parvin, and quitclaimed the building and any remaining amounts in the account to Parvin when Parvin was formed. Some of that money was distributed to the Adel brothers in 2011.

Brian testified he did not receive any distribution from Parvin from 2012 through 2016. In 2019, Parvin distributed around $73,000 total to the Adel brothers. Brian did not recall whether there was a distribution in 2020. In 2021, there was a distribution of around $149,000 total, but Peter didn't receive any of the distribution. There was no distribution in 2022.

Brian testified that, from 2011 through 2018, on behalf of Microwave Dynamics, he paid $16,500 for rent to Parvin. He never considered what the Addendum said about the rental amount, and the $16,500 amount was never equal to the debt service on the bank and SBA loans. During this time period, he served as the CFO for Microwave Dynamics and the manager and bookkeeper for Parvin.

4. The Trial Court Decision

Following trial, the court determined as follows: "[The] Court finds the rent was properly set at $16,500.00, and that the parties did not act on the addendum, but rather always acted on the original lease. [¶] [The] Court finds the parties did not act on the Consumer Price Index (CPI) increases until January 2021. [The] Court indicated the calculations of the CPI increases would start January 1, 2021, going forward on an annual basis. CPI increases are to be determined and agreed upon by the parties, according to the Los Angeles-Long Beach-Anaheim CPI Index in the lease."

It further determined that "Microwave Dynamics has overpaid rent from January 2021 through February 2022, and underpaid from March 1, 2022 through January 1, 2023."

As to the distribution-related claims, the court found "Parvin, LLC owes Peter Adel $63,857," but that "Microwave Dynamics owes Parvin, LLC $70,000." It concluded that Peter was the prevailing party against Parvin, and ordered Parvin to grant Peter access to its books within 30 days. Parvin was the prevailing party against Microwave Dynamics.

### 5. Stipulated Order

Subsequently, the parties met and conferred to determine the annual CPI increases and the calculations of the various damages amounts. They expressly stated that the calculations were completed "without waiver to any rights to appeal." The parties agreed that pursuant to the trial court's rulings, judgment would be entered in favor of Parvin and against Microwave Dynamics in the total amount of $106,938.96, consisting of $100,795.96 in back rent, plus $70,000 for triple net expenses owing from 2011 through 2014, offset by Peter's award of $63,857. The monthly base rental rate for the calendar year 2023 would be $18,718.42; the Addendum had no force or effect; and starting on January 1, 2024 and every January 1st thereafter, the monthly rental rate would be increased consistent with Section 5 of the Lease. The parties further stipulated Parvin would provide Peter access to its books and records by March 2, 2023.

The trial court signed the stipulated order, and it was entered as a judgment on February 22, 2023. Microwave Dynamics and Peter Adel then appealed.

## II

### WAIVER

Microwave Dynamics contends the trial court erred in determining that "by its conduct [it] waived the rental scheme set forth in the Lease addendum in favor of that set forth in the original lease." "To establish

waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it. [Citations.] . . . Under the clear and convincing evidence standard, the proponent of a fact must show that it is 'highly probable' the fact is true. [Citation.] The waiving party's knowledge of the right may be 'actual or constructive.' [Citation.] Its intentional relinquishment or abandonment of the right may be proved by evidence of words expressing an intent to relinquish the right or of conduct that is so inconsistent with an intent to enforce the contractual right as to lead a reasonable factfinder to conclude that the party had abandoned it." (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 584.)

"Whether there has been a waiver is a question of fact. [Citations.] We review the trial court's finding of waiver under the deferential 'substantial evidence' standard. [Citations.] 'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court.'" (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1052-1053, superseded by statute on other grounds as stated in *Eller Media Co. v. City of Los Angeles* (2001) 87 Cal.App.4th 1217, 1219, fn. 3.) Where, as here, the substantial evidence test applies and "the evidence gives rise to conflicting reasonable inferences, one of which supports the finding of

11

the trial court, the trial court's finding is conclusive on appeal. [Citation.] That rule applies even where the standard of proof in the trial court was 'clear and convincing evidence' rather than 'a preponderance of the evidence.'" (*Rubin v. Los Angeles Fed. Sav. & Loan Assn.* (1984) 159 Cal.App.3d 292, 298 (*Rubin*).)

Here, Microwave Dynamics does not argue it was unaware of the rental scheme set forth in the Addendum, which was executed in April 2011. Any contrary contention would not be supported by the record because Peter, its Chief Executive Officer, and Brian, its CFO from 2011 through November 2018, were signatories of the Addendum. Thus, Microwave Dynamics had knowledge of the rental scheme in the Addendum.

However, the evidence established that from 2011 through early 2022, Microwave Dynamics did not act consistent with the rental scheme set forth in the Addendum. Rather than paying an amount equal to the debt service on two loans, as set forth in the Addendum, it paid the base $16,500 rent set forth in the Lease. Brian testified he never considered the Addendum when paying the monthly rental rate and the $16,500 amount never equaled the debt service on the loans. When Brian left in November of 2018, Peter continued to pay the $16,500 base amount. After Parvin sought an increased rent, Peter continued to pay the $16,500 base amount and paid the difference between the base amount and the increased amount under protest. Peter never asserted the rental scheme in the Addendum should apply until March 2022. The record thus shows by clear and convincing evidence that Microwave Dynamics through its conduct over a decade waived any right to enforce the rental scheme set forth in the Addendum.

Microwave Dynamics argues that Peter is the only individual who can waive a contractual right on behalf of Microwave Dynamics and thus

12

the prior conduct of Brian should not be considered. Even if true, the evidence does not suggest Brian was acting contrary to Peter's wishes when he made the $16,500 payments. Peter never expressed that the rental scheme in the Addendum applied until March 2022, and his continuation of the same payments after Brian left indicates that Brian was acting with the scope of his authority when he made the $16,500 payment. Although Peter testified he never intended to have Microwave Dynamics waive its rights under the Addendum, a subjective intent to waive is not required for a finding of waiver by conduct. (See, e.g., *Rubin, supra*, 159 Cal.App.3d at p. 298 [holding appellant "is mistaken in urging that no waiver could be found in the absence of its actual subjective intent to waive its rights"]; *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.* (2006) 144 Cal.App.4th 1175, 1194 ["where a party's conduct is so inconsistent with the intent to enforce a legal right, the intention to give up that right will be *presumed*, notwithstanding evidence that the party did not subjectively 'intend' to relinquish it"]; *McDanels v. General Ins. Co.* (1934) 1 Cal.App.2d 454, 460  (*McDanels*)["To constitute a waiver there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it, *or such conduct as warrants an inference of the relinquishment*." (Italics added)].)[1] The trial court properly found waiver by conduct.

III

SETOFF

With respect to Peter's claims relating to the Parvin distributions, the trial testimony established that the distributions to Peter

---

[1]  We note Microwave Dynamics omitted the italicized language when citing *McDanels* in discussing the elements of waiver.

13

were withheld to "equalize" the amount Microwave Dynamics owed to Parvin for certain expenses in 2011 through 2014. The trial court ruled Peter was entitled to $63,857 for his pro-rata share of the distributions, but that Microwave Dynamics owed Parvin $70,000. The stipulated judgment offset or setoff Peter's $63,857 judgment against Parvin with Parvin's $70,000 judgment against Microwave Dynamics.

Peter contends the trial court erred in awarding Parvin $70,000 because Parvin never affirmatively requested such damages in its cross-complaint. Even if it had, the claim was time-barred by the applicable four-year statute of limitations since it accrued at the latest in 2015, and the cross-complaint was filed in 2021.

Peter further contends that the $70,000 judgment against Microwave Dynamics could not be used to offset Peter's $63,857 award because there was no mutuality of interest between Peter, who brought his claim in his capacity as a member of Parvin entitled to distributions, and Microwave Dynamics, a corporate entity who owed Parvin damages for triple net expenses under the Lease for the time period of 2011 through 2014, when it was jointly owned by the Adel brothers.

Parvin concedes that it did not assert an affirmative claim in its cross-complaint for the triple net expense discrepancy and that the trial court cannot create such an affirmative claim. However, Parvin notes that it asserted setoff as an affirmative defense to the first amended complaint and substantial evidence supported the court's setoff determination. Essentially, Parvin argues the trial court could make its setoff ruling because Parvin asserted a setoff affirmative defense.

We agree that the trial court's determination that Microwave Dynamics owed $70,000 to Parvin for triple net expenses from 2011 through

14

2014 is supported by substantial evidence, but are not persuaded that the factual determination is relevant to the issues in this case. Under Code of Civil Procedure section 431.70, which codifies the setoff affirmative defense, "where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other . . . ." The factual finding that Microwave owed $70,000 and the ruling that the amount can be offset against Peter's distributions was made in connection with Peter's claims for his pro rata share of the Parvin distributions. However, Peter is the only named plaintiff for those claims. Microwave Dynamics does not have an interest in the Parvin distributions. Thus, there is no mutuality as required under Code of Civil Procedure section 431.70, i.e., Microwave Dynamics never made any demand for distributions against Parvin such that Parvin can offset the triple net expenses discrepancy. Accordingly, Peter's award for his pro rata share of the Parvin distribution cannot be offset by the $70,000 discrepancy owed by Microwave Dynamics. Peter is entitled to an award of $63,857. Moreover, because there was no affirmative claim and setoff was asserted only as an affirmative defense, $70,000 cannot be added to the money judgment against Microwave Dynamics for back rent. (See *Morris Cerullo World Evangelism v. Newport Harbor Offices & Marina, LLC* (2021) 67 Cal.App.5th 1149, 1158 ["an affirmative defense cannot give rise to affirmative relief such as damages"].)

Finally, we reject Parvin's contention that by stipulating to the judgment, Peter waived or forfeited any challenge to the setoff ruling. The parties expressly agreed that the stipulated "calculation" of the damages

15

amounts did not constitute a "waiver of any right to appeal" the court's rulings. Parvin argues the calculation of damages where appellate rights were reserved is limited to the CPI increase calculation based on the court's order, but there is no such limitation in the reservation of right in the stipulation. In light of the other calculations in the stipulation, we interpret the reservation of appeal rights to encompass Peter's challenge to the trial court's setoff ruling.

## IV

### DISPOSITION

The judgment is affirmed in part, reversed in part. The ruling offsetting Peter's $63,857 award with the $70,000 award against Microwave Dynamics for the triple net expense discrepancy from 2011 through 2014 is reversed. Peter is entitled to $63,857 for his pro rata share of the Parvin distributions, and Microwave Dynamics is not liable for the $70,000 triple net expenses discrepancy for the reasons stated in this opinion. The remaining rulings are affirmed. The superior court is ordered to correct the judgment in a manner consistent with this opinion. The parties shall bear their own costs on appeal.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

GOETHALS, J.

16