Filed 2/26/14  Fresh & Easy Neighborhood Market v. WCPP-CT CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FRESH & EASY NEIGHBORHOOD MARKET INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WCPP-CT, LLC, et al., <br><br> Defendants and Appellants. | B244843 <br><br> (Los Angeles County  Super. Ct. No. BC430419) |

APPEAL from a judgment of the Superior Court for Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

Freeman, Freeman & Smiley, Steven E. Young; Greene, Fidler & Chaplan, and Gary D. Fidler for Defendants and Appellants.

McKenna Long & Aldridge, Andrea T. Prohaska and Wayne S. Grajewski for Plaintiff and Respondent.

Defendants WCPP-CT, LLC and WCPP-LK, LLC (collectively, Landlord) appeal from a judgment in favor of plaintiff Fresh & Easy Neighborhood Market

Inc. following a bench trial on Fresh & Easy's complaint for declaratory relief regarding the lease agreement between Landlord and Fresh & Easy. The trial court found that the lease agreement did not authorize Landlord to charge Fresh & Easy a management or administrative fee as part of the common area maintenance (CAM) costs the Landlord incurred in its operation of the shopping center in which Fresh & Easy was located, and ordered Landlord to reimburse Fresh & Easy all amounts it had paid to Landlord for management/administrative fees. We affirm the judgment.

## BACKGROUND

In the spring of 2006, Landlord was contacted by the Legaspi Company (Legaspi), a real estate broker, regarding a possible lease of space in Landlord's shopping center in West Covina by Fresh & Easy (formerly known as Tesco Stores West, Inc.). Legaspi sent a broker's questionnaire to Eric Treibatch, seeking information about the space and the Landlord. Treibatch and his father, Chaim "Chuck" Treibatch,[1] are the owners of Ophir Management Services, Inc. (Ophir Management), the company that manages the shopping center. Treibatch and his father also are two of the three members of WCPP-CT, LLC, which owns a 55 percent interest in the shopping center; the other owner is WCPP-LK, LLC, which is controlled by Larry Kuppan. Treibatch filled out the broker's questionnaire and returned it to Legaspi. Landlord's responses to the questionnaire indicated, among other things, that Fresh & Easy would be required to pay common area charges, which Landlord estimated would be $3.72 per square foot for the first year of the

---

[1] We will refer to Eric Treibatch as Treibatch, and to Chaim Treibatch as Chuck Treibatch.

lease. Fresh & Easy (or its representative) did not ask for, and Landlord did not provide, a breakdown of the components of the common area charges.

In May 2006, Fresh & Easy presented to Landlord, in the form of a letter of intent (LOI), an offer to lease an approximately 16,700 square foot retail space at Landlord's shopping center. The parties conducted negotiations over the next two months, and Fresh & Easy sent Landlord the final LOI in July 2006. The LOI included a term requiring Fresh & Easy to pay "its proportionate share of . . . common area charges including expenses, maintenance and repair for the common areas." Landlord formally accepted the offer on August 1, and the parties began negotiating the terms of the lease.

Jonathan Hunt, an attorney at the Atlanta office of McKenna, Long & Aldridge, represented Fresh & Easy in the negotiations, and Treibatch and his father Chuck Treibatch represented Landlord.[2] On July 28, 2006, Hunt emailed to Treibatch a draft lease based upon the terms of the LOI and the broker's questionnaire. That initial draft included, among others, the following provisions regarding Landlord's maintenance of the common areas and the CAM charges.

Paragraph 16.1 obligated Landlord to operate the shopping center "in a first-class manner."

Paragraph 16.2 set forth Landlord's obligations regarding the maintenance and operation of the common areas, and gave examples of the kinds of services required to operate and maintain the common areas "in a manner commensurate with the highest standards of retail maintenance."

---

[2] Although Treibatch stated in his response to the broker's questionnaire that Landlord was represented by attorney Gary Fidler of Greene, Fidler & Chaplan, Fidler was not available at the time of the negotiations. Treibatch, however, had substantial experience negotiating commercial leases, having negotiated approximately 150 such leases by that time.

Paragraph 16.4 obligated Fresh & Easy to pay its share of Landlord's costs related to maintenance of the common areas. The initial draft of the lease stated, in relevant part: "Landlord shall pay all of the costs related to the maintenance of the Common Areas. From and after the Date of Rent Commencement, Tenant shall pay to Landlord Tenant's Pro Rata Share of the Common Area maintenance costs incurred by Landlord from and after the Date of Rent Commencement in fulfilling Landlord's obligations under Section 16.1 ('Common Area Charges'). The Common Area Charges shall not include and Tenant shall not pay: . . . (c) any cost in the nature of an administrative, management, accounting, data processing, custodial, general overhead or similar charge, whether or not expressed as a percentage add-on to the costs and costs of maintenance. In no event shall there be any duplication of costs billed to Tenant under any provision of this Lease."

Paragraph 16.5 set forth the method of payment of CAM charges. It provided that, for the first year, the amount charged would be as set forth in paragraph 1.15, which stated that the "Common Area Charge" would be $3.72 per annum per square foot (as stated in Landlord's response to the broker's questionnaire). It also provided that this amount could be adjusted annually (but could increase by no more than five percent each year), and that if the actual pro rata share was less than the estimated "Common Area Charge," Landlord would refund the excess to Fresh & Easy when it delivers its annual statement of CAM costs (or Fresh & Easy would remit the balance due if the actual pro rata share was more than the estimate).

Paragraph 16.6 gave Fresh & Easy the right to audit the statement of CAM charges (which Landlord was obligated to provide annually) and "challenge the accuracy or validity of any items therein," and required Landlord to refund any overpayments the audit might reveal.

4

Treibatch returned by email a marked-up copy of the lease with his proposed changes, additions, and deletions. One of his proposals was to delete "administrative, management" from paragraph 16.4. A few days later, Hunt emailed to Treibatch a copy of Treibatch's mark-up, with handwritten notations indicating which proposed changes were acceptable to Fresh & Easy. Next to the proposed deletion of "administrative, management," Hunt had written "Yes." Treibatch and Hunt spoke by phone a few days later to discuss the proposed changes. Other than noting Fresh & Easy's agreement to the deletion in paragraph 16.4, there was no discussion about it or any possible effect of that deletion.

The lease was signed by Landlord on August 22, 2006, and became effective on August 28, 2006. The provisions governing CAM charges remained largely unchanged from the initial draft, except for the deletion in paragraph 16.4 and certain changes in figures that are not relevant to this appeal. The final version of paragraph 16.4 stated: "Landlord shall pay all of the costs related to the maintenance of the Common Areas. From and after the Date of Rent Commencement, Tenant shall pay to Landlord Tenant's Pro Rata Share of the Common Area maintenance costs incurred by Landlord from and after the Date of Rent Commencement in fulfilling Landlord's obligations under Section 16.1 ('Common Area Charges'). The Common Area Charges shall not include and Tenant shall not pay: (a) the original capital costs of the Shopping Center and the original equipment serving the same; (b) any capital expenditures or the capital costs of improvements, replacements, additions and alterations of the Common Areas; and (c) any cost in the nature of an accounting, data processing, custodial, general overhead or similar charge, whether or not expressed as a percentage add-on to the costs and costs of maintenance. In no event shall there be any duplication of costs billed to Tenant under any provision of this Lease." The lease also included an integration clause and an "Interpretation, Construction" clause stating

5

that "Each Party and its respective attorneys have participated equally in the drafting, preparation and negotiation of this Lease, which shall be construed accordingly."

The first lease year began on June 1, 2007.  In accordance with the lease, Fresh & Easy was charged for CAM costs at a rate of $3.72 per annum per square foot.  Sometime in the first half of 2008, Landlord provided Fresh & Easy's third party leasing administrator, Jones Lang LaSalle (Jones Lang) with a reconciliation statement of CAM costs for 2007.

On July 2, 2008, Greg Calig from Jones Lang sent an email to Vera at Ophir Management (Vera is the controller), asking about certain charges on the CAM statement.[3]  Among other questions, Calig asked about the management fee.  He noted that the fee at the West Covina location was very high, especially compared to the Fresh & Easy at another location, and asked for an explanation of the charge. In her response, Vera explained that the management fee calculation was dependent on monthly gross income collection, and the West Covina shopping center was a larger property than the other location and did not have any vacancy. Although Calig followed up with additional questions on other issues, he did not further address the management fee; he did, however request supporting documentation for the CAM statements at both locations.  On August 1, 2008, Calig sent Vera another email stating that Fresh & Easy was challenging a charge for "LA Co Flood Control"  because it was a capital expenditure, and capital expenditures were specifically excluded from CAM charges under paragraph 16.4 of the lease.

---

**3**      Fresh & Easy also leased space at another shopping center managed by Ophir Management, located in Vista.  The email asked questions about charges on the CAM statements for both locations.

In April 2009, after receiving the CAM reconciliation statement for 2008, Carrie Gillis of Jones Lang asked for additional documentation. Ophir Management provided the requested documentation, and on June 29, 2009, Vera sent an email to Gillis asking Fresh & Easy to pay the outstanding balance due. On August 13, 2009, Gillis sent an email to Vera that, among other things, challenged the management fee on the ground that the lease prohibits such fees. On August 31, 2009, Gillis sent a letter to Vera, stating that the lease does not authorize any management or administrative fees, and asking that the management fee be removed from the CAM statement. Following further discussions, Treibatch sent an email to Gillis to "finalize" the outstanding issues. With regard to the management fee, Treibatch stated, "In our lease negotiations w/McKenna Long, we intentionally struck 'Admin & Mgt' from the tenant[']s exclusions from CAM. . . . Also you can verify on the McKenna Long side that this indeed was removed in order to include such fees in the CAM. BTW, you have been paying these charges up until this point because this was pointed out to Greg Calig in August of 2008." In response, Gillis maintained that the charges were not authorized by the lease.

In January 2010, Fresh & Easy filed the instant lawsuit against Landlord for declaratory relief, seeking a declaration that (1) the administrative/management charge is not a proper CAM charge; (2) Fresh & Easy is entitled to be reimbursed all amounts it has paid for administrative/management charges; and (3) Fresh & Easy has no obligation to pay administrative/management charges for the remainder of the lease term and any subsequent renewals.[4]

---

[4]     Fresh & Easy also sought similar declarations regarding the charge for the flood control district rent, but the parties entered into a stipulation regarding those charges, and Fresh & Easy ultimately dismissed the cause of action related to those charges.

The case was originally tried before Judge John A. Kronstadt, who announced his tentative decision on March 11, 2011, finding against Fresh & Easy on the management fee issue. Both parties timely filed requests for a statement of decision, but before Judge Kronstadt issued the statement he was appointed to the United States District Court. Fresh & Easy requested that a mistrial be declared after the case was assigned to Judge Robert H. O'Brien, which request apparently was denied, and, after the case was reassigned to Judge Barbara M. Scheper, judgment was entered in accordance with Judge Kronstadt's tentative decision. Fresh & Easy moved for a new trial on the ground that where a statement of decision is requested but the trial judge is unavailable to issue one, a new trial is required. Judge Scheper granted the motion, and a new bench trial was conducted.

At trial, both sides presented testimony regarding what management and administrative fees were, how they could be calculated, and custom and practice in the commercial real estate field regarding those fees. For the most part, all of the witnesses agreed that management fees generally related to costs associated with managing the entire shopping center (including such things as advertising to fill vacancies, negotiating leases, evicting tenants, collecting rents, etc.), while administrative fees generally related to the maintenance of common areas. The witnesses also agreed there were several ways that administrative or management fees may be calculated for shopping center tenant leases: they may be based upon (1) a percentage of CAM charges; (2) a percentage of a tenant's rent; (3) a percentage of the income the landlord receives from all tenants in the shopping center, inclusive of tax and insurance payments; or (4) a percentage of income from tenants, excluding tax and insurance payments. All witnesses agreed that the

8

method of calculation and the percentage to be charged usually are the subject of negotiation, and the method and percentage are set forth in the lease.[5]

In addition to presenting evidence on custom and practice, both sides presented testimony from Hunt and Treibatch, who participated in the negotiations that led to the final lease in this case.[6] Both men testified that there were no discussions about management or administrative fees during the negotiations, nor was there any discussion about the deletion of the words "administrative, management" from the initial draft of the lease. Treibatch testified he believed that by deleting those two words, Landlord would be allowed to charge Fresh & Easy administrative and/or management fees. Hunt testified that when he agreed to delete "administrative, management" from paragraph 16.4, he did not believe he was agreeing to allow Landlord to charge an administrative or management fee, because those two words were redundant of later language in that same subsection -- i.e., "general overhead or similar charge, whether or not expressed as a percentage add-on to the costs and costs of maintenance" -- and therefore the deletion did not change the exclusion set forth in that subsection. Both Treibatch and Hunt admitted that neither had expressed to the other his belief regarding the meaning of the deletion.

After close of evidence and closing arguments, the trial court announced its tentative decision in favor of Fresh & Easy and, pursuant to Landlord's request,

---

[5] Chuck Treibatch testified that the management fee charged to Fresh & Easy was based upon the fee Landlord paid to Ophir Management to manage the entire shopping center; that fee was equal to five percent of Landlord's gross monthly collections from all of the tenants.

[6] Hunt testified in the first trial, but was unavailable for the second trial. For the second trial, the parties agreed to rely upon portions of his testimony from the first trial, which was read into the record.

9

issued a statement of decision. In the statement of decision, the court began its analysis by noting that, although both parties offered evidence of their subjective intent regarding the lease negotiations, neither party disclosed their subjective intent to the other, and therefore their subjective intents were irrelevant to interpret the lease. The court then turned to the plain language of the agreement, and concluded that the lease neither specifically authorizes nor specifically prohibits Landlord from charging a management or administrative fee as a component of CAM charges. However, the court determined that the management fee at issue could not be considered a proper CAM charge because it was based upon the fee Landlord paid to Ophir Management for property management services, and many of the categories of work Ophir Management performed were not common area maintenance expenses. Finally, the court observed that, even if in theory a management fee properly could be charged under the terms of the lease, the agreement could not be enforced because there is no language setting forth how the management fee is to be calculated and there is no single custom or practice as to how one is calculated, and thus Fresh & Easy would have no ability to challenge the fee if it believed it was excessive.

Having concluded that the lease does not contain an enforceable agreement requiring Fresh & Easy to pay a management or administrative fee, the court addressed Landlord's argument that Fresh & Easy waived its objection to payment of the management fee or is estopped from asserting an objection, and found Landlord's argument to be without merit. Judgment was entered in favor of Fresh & Easy, and Landlord timely filed a notice of appeal from the judgment.

**DISCUSSION**

Landlord raises six issues in the appellants' opening brief. Two involve evidentiary issues, two involve Landlord's affirmative defenses of estoppel and

10

waiver, and two involve Landlord's objection to, and the adequacy of, the statement of decision. In its respondent's brief, Fresh & Easy seems to fight battles it already had won, devoting a majority of its brief to arguments supporting the trial court's reasoning on issues that Landlord did not challenge in the appellants' opening brief. Landlord subsequently addressed those issues in the appellants' reply brief. Because they were not raised in the opening brief, however, Landlord forfeited those issues and we decline to address them. (*Kovacevic v. Avalon at Eagles' Crossing Homeowners Assn.* (2010) 189 Cal.App.4th 677, 680, fn. 2.) Therefore, our review is limited to the six issues raised in the appellants' opening brief: (1) whether the trial court committed prejudicial error by allowing Matthew Price, Fresh & Easy's director of real estate, to testify about Fresh & Easy's policy regarding management fees; (2) whether the trial court committed prejudicial error by admitting evidence regarding leases between Landlord and other tenants at the West Covina shopping center; (3) whether the evidence supported the trial court's ruling on Landlord's estoppel defense;[7] (4) whether the trial court erred in finding that Fresh & Easy did not waive its right to challenge the imposition of a management fee; (5) whether the trial court committed reversible error by failing to consider Landlord's objections to the proposed statement of decision; and (6) whether the trial court failed to fully respond to Landlord's request for a statement of decision.

A.      *Admission of Matthew Price's Testimony*

---

[7]      Landlord actually frames this issue as whether the trial court "failed to fully consider the substantial evidence establishing [Landlord's] affirmative defense of estoppel." As discussed in section C., *post*, Landlord misunderstands the appropriate standard of review.

Fresh & Easy called Matthew Price to testify in its case in chief. Price testified that he came to California in March 2006 as part of Fresh & Easy's original team in the United States. From March 2006 to December 2007, he was Fresh & Easy's regional real estate director for Orange, San Bernardino, and Ventura Counties, responsible for finding sites, negotiating leases, and getting stores permitted and open. In November 2010, he became the director of real estate, responsible for the property acquisition and property management departments for California, Nevada, and Arizona.

Over Landlord's objection, Price testified that at the time of the lease negotiations in this case, Fresh & Easy had a specific policy not to include management fees in leases, and that the policy was communicated to attorneys who were negotiating leases on Fresh & Easy's behalf. He explained the difference between management fees (which are charged for managing the general services of the entire shopping center, and generally were based on a percentage of the gross receipts of the center) and administrative fees (which is a charge for managing and administering the maintenance of common areas, and generally is passed down to tenants as a percentage of CAM costs), and testified that Fresh & Easy would accept administrative fee provisions and negotiate the percentage to be charged. On cross-examination, Price acknowledged that he had no involvement in the negotiations of the lease at issue in this case.

On appeal, Landlord contends the trial court erred in overruling its objection to Price's testimony regarding Fresh & Easy's policy not to include management fees in leases and its communication of the policy to its attorneys, because the testimony was irrelevant and prejudicial.

"The trial court has broad discretion in ruling on the relevance of evidence. [Citation.] The court abuses its discretion only if its ruling is arbitrary, capricious or patently absurd. [Citation.] We can reverse a judgment based on the erroneous

12

admission of evidence only if it is reasonably probable that the appellant would have obtained a more favorable result absent the error, so the error resulted in a miscarriage of justice. [Citations.]" (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 748.)

In this case, even if, as Landlord asserts, Price's testimony was not relevant -- an issue we do not decide -- Landlord failed to show prejudice from its admission. Landlord contends "Price's testimony was harmful and prejudicial to [Landlord] because the Policy in question was never made known to [Landlord] during the lease negotiations." Landlord misunderstands the prejudice that must be shown on appeal to require reversal of a judgment. To obtain reversal, Landlord must show "it is reasonably probable that the appellant would have obtained a more favorable result absent the error." (*Faigin v. Signature Group Holdings, Inc.*, *supra*, 211 Cal.App.4th at p. 748.) This Landlord did not -- and cannot -- do. In considering Price's testimony, the trial court was well aware that Fresh & Easy's policies regarding management and administrative fees were not disclosed to Landlord, because both Treibatch and Hunt testified that they never had any discussions about management or administrative fees during the negotiations. Moreover, although the trial court referred to Price's testimony in the statement of decision, it is clear from the context that that testimony had no bearing on the trial court's determination. The court's reference was included in its explanation of Fresh & Easy's subjective intent, which the court concluded was irrelevant to contract interpretation. Thus, admission of Price's testimony, even if erroneous, did not prejudice Landlord.

B.    *Admission of Evidence of Other Leases*

During Fresh & Easy's case-in-chief, Fresh & Easy questioned Treibatch about Landlord's leases with several other tenants at the shopping center, and

offered those leases into evidence. Landlord objected to this line of questioning and to admission of the leases, arguing the evidence was not relevant and that it should be excluded under Evidence Code section 352 because the questioning would require an undue consumption of time. Counsel for Fresh & Easy argued the evidence was relevant because the leases would show Landlord's custom and practice with regard to "the charging of a management fee and how it is presented in a lease." The court allowed the questioning to continue conditionally, saying that if it found the evidence was not relevant, it would stop the questioning. After hearing the testimony regarding several of the leases, the court found that the evidence was relevant and admitted the leases into evidence.

On appeal, Landlord asserts the admission of the leases and testimony about them was prejudicial error. It contends that evidence of other leases was irrelevant because the lease at issue here was different from the other leases, and the trial court "never reviewed or considered the give-and-take that took place when the Landlord . . . negotiated management and/or administrative fees with other tenants." Landlord argues admission of the evidence was prejudicial because the court stated in its tentative ruling that it found important that in those leases, where there is a provision for management or administrative fees to be paid, all of the leases specify how that fee is to be calculated.

We conclude the trial court did not abuse its discretion in admitting this evidence. The fact that the leases were different than the lease at issue here (and, in fact, different from each other), or that the circumstances under which they were negotiated were unknown to the court, does not render them irrelevant to the issue of custom and practice with regard to how the obligation of the tenant to pay management/administrative fees generally appears in leases. Indeed, the fact that all of the other leases included a provision specifying how those fees are to be calculated is relevant to the issue the court was asked to decide, i.e., whether there

14

was an enforceable agreement regarding the payment of management or administrative fees. The leases, which corroborated the testimony of Fresh & Easy's expert witness regarding custom and practice in the industry, demonstrated that there are a variety of ways that management and/or administrative fees may be -- and are -- calculated with regard to the tenants in the shopping center at issue, and are relevant to whether the lease at issue, which Landlord contends includes an obligation to pay management/administrative fees but does not specify a method of calculation, is enforceable.

C.      *Ruling on Landlord's Estoppel Defense*

In its next contention, Landlord argues the trial court "failed to fully consider the substantial evidence establishing [Landlord's] affirmative defense of estoppel." Landlord misunderstands the appellate court's role on review of findings regarding an estoppel defense. "The existence of an estoppel is generally a question of fact for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.) Thus, the question we must answer is whether the conclusion asserted by Landlord -- that Fresh & Easy should be estopped from claiming Landlord is not authorized to charge a management fee -- is the only conclusion that can be reasonably drawn from the evidence. We conclude it is not.

As Landlord correctly notes, "four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he

15

must rely upon the conduct to his injury." (*Driscoll v. City of Los Angeles*, *supra*, 67 Cal.2d at p. 305.)

Landlord's contention that it established estoppel in this case fails at the first element. Landlord states that Fresh & Easy knew it had agreed to pay management fees because it agreed to delete "administrative, management" from paragraph 16.4. But as the trial court found, supported by substantial evidence, Treibatch never disclosed to Hunt or anyone at Fresh & Easy his intention that the deletion would allow Landlord to charge a management fee. Therefore, Landlord cannot establish the first element, and the trial court correctly found that its estoppel defense had no merit.

D.    *Ruling on Landlord's Waiver Defense*

Landlord contends the trial court committed reversible error by failing to consider facts showing that Fresh & Easy "conducted itself in such a manner that it waived any rights to object to [Landlord's] right to collect management fees." We disagree.

"Waiver requires an existing right, benefit, or advantage, actual or constructive knowledge of the right's existence, and either an actual intention to relinquish it or conduct so inconsistent with any intent to enforce the right as to induce a reasonable belief that it has been relinquished. [Citations.] The waiver of a legal right cannot be established without a clear showing of intent to give up such right. [Citation.] 'The burden is on the party claiming the waiver to prove it by clear and convincing evidence that ""does not leave the matter doubtful or uncertain. . . ."" [Citation.]' [Citation.]" (*Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 959.) "'Waiver of a contractual right . . . is ordinarily a question of fact and determination of this question, if supported by substantial evidence, is binding on an appellate court.'" (*Rubin v. Los Angeles*

16

*Fed. Sav. & Loan Assn.* (1984) 159 Cal.App.3d 292, 298.) "[W]hen the evidence gives rise to conflicting reasonable inferences, one of which supports the finding of the trial court, the trial court's finding is conclusive on appeal." (*Ibid.*)

In this case, the trial court found there was no waiver because the evidence was undisputed that Fresh & Easy did not know it was being charged a management fee until it received the first CAM reconciliation statement in early 2008, and it waited only a year after that to challenge the fee. Landlord argues, however, that the trial court misapplied the law of waiver because it stated that "[w]aiver always rests upon intent" and therefore failed to consider whether Fresh & Easy's conduct constituted an implied waiver. (Citing *Rubin v. Los Angeles Fed. Sav. & Loan Assn.*, *supra*, 159 Cal.App.3d at p. 298 ["Although waiver is frequently said to be the intentional relinquishment of a known right, waiver may also result from conduct 'which, according to its natural import, is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished'"].)

Landlord is mistaken. The trial court stated the law of waiver correctly. Waiver *does* always rest upon intent, even when the waiver is implied. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053 ["'The waiver may be either express, based on the words of the waiving party, or implied, based on conduct *indicating an intent to relinquish the right*,'" italics added], superceded by statute on other grounds.) And the court in this case correctly applied the law, finding that neither Fresh & Easy's one-year delay after learning it was being charged a management fee, nor "Calig's failure to press Ophir [Management] on the issue of the management fee in 2008" was sufficient to show that Fresh & Easy intended to relinquish its right to challenge the fee. Even if, as Landlord asserts, that conduct could also support an inference that Fresh & Easy waived its right to challenge the

17

fee, "the trial court's finding is conclusive on appeal." (*Rubin v. Los Angeles Fed. Sav. & Loan Assn., supra*, 159 Cal.App.3d at p. 298.)

E.       *Landlord's Objections to Proposed Statement of Decision*

Landlord contends we cannot infer that the trial court's findings on certain disputed facts were in favor of Fresh & Easy because Landlord timely filed objections to the trial court's proposed statement of decision, which objections the court failed to resolve. (Citing Code Civ. Proc., § 634.) Landlord identifies issues for which it contends we cannot infer factual findings in favor of Fresh & Easy because the trial court failed to resolve its objection. It is mistaken.

First, Landlord observes that the trial court found that the lease did not authorize Landlord to charge the management fee because the terms of the lease do not specifically authorize the charge, but the court failed to consider that the lease was drafted "in an exclusionary format" that specified certain categories of charges that Fresh & Easy did not have to pay, and "management" was deleted from that list of categories. The statement of decision belies this assertion. In concluding that Fresh & Easy's agreement to delete "administrative, management" from paragraph 16.4 did not constitute an agreement to pay a management fee, the court observed that in order for a management fee to be authorized under the language of that paragraph, the management fee must be "'related to the maintenance of the Common Areas,'" and the court found that the management fee at issue here was not related. In reaching this conclusion, the trial court quoted from the first part of paragraph 16.4. The fact that the remainder of the paragraph was "exclusionary" because it listed categories of costs that Fresh & Easy did not have to pay was irrelevant to the trial court's analysis.

Second, Landlord argues the court misapplied case law when it concluded that an obligation to pay a management fee was not part of the accepted terms of

18

the contract and could not be read into the contract. Even if Landlord's objection to the trial court's resolution of this issue had merit (which it does not), Code of Civil Procedure section 634 does not apply. That statute provides: "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634.) There is no question that the statement of decision unambiguously resolved the issue whether there was an enforceable obligation for Fresh & Easy to pay a management fee. In any event, we conclude the trial court correctly applied the law in determining there was no enforceable obligation because the terms of the alleged obligation were completely undefined. (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 770 ["To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages"].)

Third, Landlord asserts the trial court erred by stating that Calig questioned the management fee, because he only questioned the *amount* of the fee rather than the management fee itself. Landlord, however, fails to explain how the court's failure to specify the nature of Calig's questioning renders the statement of decision ambiguous or incomplete. We find that the court's omission is immaterial.

We have already addressed the remaining issues Landlord raises – that admission of Price's testimony regarding Fresh & Easy's policy against paying management fees was erroneous because the policy was never communicated to Landlord or to Hunt, and that the trial court failed to consider evidence showing

19

that Fresh & Easy's conduct established that it knew or should have known about the existence of the management fee and is estopped from denying the existence of the fee -- and need not address them again.

F. *Adequacy of Statement of Decision*

Landlord contends the statement of decision is inadequate because the trial court failed to address several issues Landlord set forth in its request for a statement of decision. We disagree.

"[T]he trial court is not required to respond point by point to issues posed in a request for a statement of decision. 'The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' [Citations.]" (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736-737, fn. 15.) Here, the statement of decision fairly disclosed the trial court's determinations as to all of the ultimate facts and material issues in this case. The trial court did not err by failing to address all of the issues Landlord raised in its request.

## DISPOSITION

The judgment is affirmed.  Fresh & Easy shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.